No. 14,518.

GUARDIAN LIFE INSURANCE COMPANY OF AMERICA *v.*
MCMURRY.
(94 P. [2d] 1086)

Decided September 11, 1939.   Rehearing denied October 23, 1939.

Mr. LOWELL WHITE, Mr. HOWARD ROEPNACK, for plaintiff in error.

Mr. MORTIMER STONE, Mr. ALDEN T. HILL, for defendant in error.

*En Banc.*

MR. JUSTICE YOUNG delivered the opinion of the court.

THE defendant in error, McMurry, recovered judgment in the district court against plaintiff in error, the Guardian Life Insurance Company of America, a corporation, for payments to which he alleged he was entitled by virtue of being totally disabled within the terms of the disability clause of a life insurance policy issued to him by said company which provided for total disability benefits, together with the amount of certain premiums which he was required to pay in order to keep his policy in force for the period of time during which, as he alleged, he was entitled to disability payments, but which the company had refused to make. The parties will be designated as plaintiff and defendant as they appeared in the trial court.

Defendant's assignments of error challenge: (1) The sufficiency of the evidence to sustain the verdict and judgment; (2) the giving of certain instructions and the refusal of the court to give certain tendered instructions; (3) the admission of testimony alleged to have been in relation to an attempt by the parties to compromise their difficulties; (4) rulings of the trial court on the conduct of counsel during argument; (5) the ruling of the trial court for the recovery of premiums paid after the suit was instituted.

To the last four of these matters the defendant devotes no argument whatsoever. However, the grounds of challenge therein set forth are not waived, and therefore, we have examined those parts of the record to which they are directed, and after such examination we entertain the view that no more need be said of them in this opinion than was devoted to the questions by defendant in the briefs.

Defendant strenuously contends that the evidence does not sustain a right to recover under the disability clause of the policy which, so far as pertinent, is as follows: "If due proof shall be furnished to the company

at its home office that the insured, before attaining the age of sixty years and while there was no default in payment of premium hereunder and this policy was in full force and effect, has either (a) become totally and permanently disabled by bodily injury or disease so that he is and will be *permanently, continuously and wholly prevented thereby from performing any work or from following any occupation whatsoever for remuneration or profit,* * * * then upon approval of such proof, the company will grant the monthly income and waiver of premium benefits specified below, *the disability under (a) above being presumed to be permanent if it is present and has been in existence continuously for not less than three consecutive months* * * *"

A clear, concise statement of the evidence will simplify the problems presented for our consideration. It is not contended by defendant, and the testimony does not admit of such a contention, that plaintiff has no disability nor that such disability as he has is not permanent. Furthermore, such disability as plaintiff has suffered is of far more than three consecutive months duration which makes it permanent under the terms of the policy. The sole question, therefore, is as to the extent of the disability. To entitle plaintiff to a recovery under the pertinent clause of the policy his disability must be of such extent, (1) that he is "continuously and wholly prevented thereby from performing any work," or, (2) that he is "continuously and wholly prevented thereby * * * from following any occupation whatsoever for remuneration or profit."

The existence of the first condition would be a total disability in the absolute sense and would ipso facto imply the existence of the second condition. It could not be contended in reason, under the testimony appearing in the record, that plaintiff is disabled in this absolute sense, that is, to such a degree that he can do no work at all. With that admitted, it remains to be determined whether or not there was testimony of such

character that reasonable men might conclude therefrom that plaintiff is so disabled as to be continuously and wholly prevented from following any occupation whatsoever for remuneration or profit; if so, that issue was properly submitted to a jury and its finding thereon is conclusive. We are of the opinion that the record discloses testimony sufficient to authorize a submission of the cause to the jury and to support the verdict for plaintiff which it rendered.

In September, 1931, the company recognized plaintiff's disability as of such extent as to bring him within the terms of the disability clause of the policy and it paid him the monthly amounts therein stipulated to and including June 19, 1932. On this date the company refused to make further payments. In July, 1933, it again recognized the disability as sufficient in extent to entitle him to payments which it resumed and continued until May, 1936, when it again refused to continue them. It is for the payments from June, 1932 to July, 1933, and from May, 1936, thereafter, and for reimbursement for two annual premiums paid during periods when the company refused to recognize his disability that plaintiff instituted this action, and for which he recovered judgment as before stated.

The testimony and the inferences reasonably deducible therefrom considered in the light most favorable to support the verdict—for in such light it is the duty of an appellate tribunal to regard it when the jury has rendered a verdict on conflicting evidence—is substantially as follows:

Plaintiff is affected with a disease known as multiple sclerosis or creeping palsy. No cure is presently known to practitioners or students of medical science. Practically without exception it is progressive and sooner or later its victim is brought to a state such that he is totally disabled, in the absolute sense, from performing work of any kind whatsoever. Plaintiff first became cognizant of the onset of the disease in January,

1929, when he noticed a dragging and lack of control of his left foot, a symptom typical of the disease. He consulted his local physician, later went to the Mayo Clinic at Rochester, Minnesota, where a diagnosis of multiple sclerosis was made, which diagnosis was also made later by Dr. Cram, plaintiff's local physician and by Dr. Blumel of Denver. Later this diagnosis was confirmed by Drs. Delehanty and Faust who examined plaintiff at the instance and request of defendant. After the first noticeable symptoms, plaintiff, who, beginning in 1929 was engaged in farming a place rented from a family corporation in which he was interested, and which owned a number of farms and ranches on which it conducted sheep feeding operations, continued to be so engaged until the spring of 1931, but found himself to tire easily in pursuing the ordinary activities required in such occupation and so weak that during the latter part of the period when he was so engaged he was forced to employ help to do practically all the work. On the trial Dr. Cram, plaintiff's physician, testified that he, plaintiff, walked with a marked limp, and a kind of shuffle, as though not certain what his foot would do; that his gait had gotten worse; that on one occasion he was called when plaintiff, while holding his baby, had dropped it to the floor, due to a tremor and inability to control his arms; that subjectively plaintiff complained of double vision; that objectively a twitching of the eye was present; that on other occasions he had trouble with his bladder, sometimes from inability to void and at other times to retain his urine; that he had similar trouble with his bowels; that there was present emotional disturbance and marked depression; that at times there was apparent improvement, but that such appearances were only after there had been an exacerbation or increase in the severity of the disease; that the disease when a base line is established never improves beyond it; that work within his limitations would not be injurious to him but that he should

16

not overwork. Dr. Cram testified further that the symptoms plaintiff exhibited were all typical of the disease. He gave it as his opinion that while plaintiff might drive a car he could not do so for a period longer than two hours with safety to himself or others. When asked what he meant by "totally disabled" as he had applied that term to plaintiff, the doctor answered: "I didn't mean by totally disabled exactly flat on his back and unable to move, unable to do things that normal individuals do. Some of them work, some of them play, or any of those things, and in my estimation he can do some things quite well, some things not at all, many things about fifty per cent efficiently and I would judge him to be on that basis a fifty per cent efficient individual." He further testified that he did not believe plaintiff, in view of his nervous condition, could efficiently supervise the work of other men or hold a job of that kind.

Dr. Blumel testified that he had examined the plaintiff in 1932, and again in 1936 and found his condition worse in 1936 than at the time of his first examination. That the strength in both his hands was markedly less on the second, than it was on the first, examination. He expressed the opinion that on neither occasion was he able to perform in the regular, customary and usual manner, the substantial and material acts necessary to carry on any work or occupation for remuneration or profit. The witness based this conclusion principally on the nature and character of the disease itself.

Plaintiff testified that in walking it was necessary for him to concentrate in order to move his left leg and that frequently in walking he had fallen down; that in driving a car his left foot on the clutch would sometimes have to be lifted and placed there with his hand; that when he exerted himself he became tired to a degree that he could not continue exertion without resting; that his left leg was not subject to his control for half an hour to an hour in the morning and that if he

became very tired it would become similarly uncontrollable during the day; that he sometimes in driving had double vision and that he could read only a short time without his eyes becoming so strained that he could not continue.

Various lay witnesses testified to his stumbling gait and his inability to do mechanical work—in which he has a great interest—efficiently. There was testimony that he had performed some work on and assisted in constructing a midget racer which he owned; that he had driven a new truck from Chicago for his brother in company with another man who was bringing out a truck at the same time; that with his wife he had driven to and from California to Fort Collins; that he had driven a truck loaded with coal from a mine for his brother twice, and had driven a tractor twice around a field; that he had done a little welding with a torch and had sprayed two or three cars with a paint gun, but was not able to do the preliminary work of sanding them. None of this work was performed for hire. The painting was in return for work done on his midget roadster. On occasions he had played pool for several hours.

The foregoing is not all of the testimony either of lay or medical witnesses, but is a fair cross section of the entire evidence.

There is no question but what the disease has progressed and is progressive in plaintiff's case, and that the disability caused by it is permanent in fact. Although not in a condition such that he could do no work at all, one of the medical witnesses stated that he could not work more than fifty per cent efficiently at what he did undertake. He had no training to fit him for anything other than farming or some kind of mechanical work. The disability clause of the policy does not require more than that he be "permanently continuously, and wholly prevented thereby from following any occupation whatever for remuneration or profit."

Men do not employ permanent cripples to drive their cars or trucks, and assume the hazards of, and responsibility for, their incompetent acts. They do not employ men who, because of physical handicaps, can operate only fifty per cent efficiently the tools and instrumentalities with which the work they are employed to do is carried on, and the jury was warranted in concluding from the evidence that plaintiff was in such physical condition that he could not obtain employment at anything he could do, and that if he was employed in any capacity that he could not do the work in the manner required of those who are regularly and ordinarily employed and remunerated for such services. If he could not obtain work he was fitted to do because of his diseased condition or if, for the same reason after securing it, he could not "deliver the goods," to use a common expression, then his diseased condition prevented him from following any occupation that he could follow if not diseased, for remuneration or profit. This was one of the contingencies against which the plaintiff was insured.

Judgment affirmed.

Mr. Justice Francis E. Bouck and Mr. Justice Bakke not participating.