## No. 19,622.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA $v.$ HERBERT M. SOMMERS.

(365 P. [2d] 544)

Decided October 9, 1961. Rehearing denied October 30, 1961.

Messrs. PHELPS & WITTELSHOFER, Mr. WANTLAND L. SANDEL, JR., for plaintiff in error.

Mr. DAVID P. STRICKLER, Mr. KARL R. ROSS, Mr. KENNETH W. GEDDES, Mr. ROGER D. HUNT, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

PLAINTIFF in error will be referred to as Prudential or as defendant. We will refer to defendant in error as Sommers or as plaintiff.

The complaint filed by Sommers in pertinent part alleged: That he was the owner and holder of six contracts of life insurance issued by Prudential; that he had paid all premiums and performed all agreements required of him; that each of the policies contained a provision for the waiver by Prudential of the payment of premiums during the time plaintiff might be totally or permanently disabled; that on or about May 1, 1950, he became totally and permanently disabled and filed with Prudential a request for waiver of premiums which Prudential granted; that since May 1, 1950, he has been totally and permanently disabled within the terms and provisions of the said waiver of premium clauses and that on August 22, 1956, Prudential, in violation thereof, notified him that the waiver of premium privilege had been withdrawn and he would thereafter be required to pay the premiums on said policies even though he was and at all times had been totally and permanently disabled; that because of Prudential's breach of the said provisions he had been required to make payments of premiums to prevent the lapse of the policies and had made such payments in the sum of $3,761.75 since August 22, 1956; that he repeatedly requested Prudential to waive the premiums under said provisions but that Prudential refused to do so and continued to require him to pay said premiums or suffer cancellation of the policies.

Sommers prayed for judgment as follows: For the sum of $3,761.75 with interest from the date of payment of each of the premiums; that Prudential be restrained and enjoined from charging premiums based upon a face amount of insurance in excess of $34,858.97; for his costs and such other relief as to the court may seem meet and proper.

The amended answer filed by Prudential raised the controlling question — whether Sommers was totally and permanently disabled at the time the complaint was filed or at pertinent times prior thereto. It was asserted by Prudential that at the time it demanded resumption of premium payments by Sommers, and at all times thereafter, he was not totally and permanently disabled within the meaning of the terms of the policy.

Following trial the court entered detailed findings of fact resolving the issues in favor of Sommers, namely, that at the time Prudential withdrew the waiver of premium privilege, Sommers was, and at all times since has been, totally and permanently disabled within the meaning of the waiver of premium provisions; that subsequent to August 22, 1956, to prevent the said policies from lapsing, Sommers was required to and did pay all premiums in the total sum of $7,176.00 until relieved therefrom by an order of court suspending payment of premiums during pendency of the action; that following August 22, 1956, Prudential credited policy dividends in the total sum of $312.60 against premiums due; that Prudential, through its agent, informed Sommers and his attorney that the waiver privileges were permanently withdrawn because Sommers was over sixty-five years of age at the time of the withdrawal; that in 1950, at the request of Prudential, Sommers was examined by Dr. Robert W. Davis, who found him to be permanently and totally disabled; that since the date of said examination Prudential has made no request that Sommers be examined except that he be examined by Dr. Kenneth Loder for the purposes of this trial; that he was examined by

Dr. Loder and was found to be totally disabled; that since May 1, 1950, he has not been employed or engaged in any business of any significant nature and during said period he has at all times been unable to perform any work or engage in any business for remuneration or profit; and that due to disease incurred by him on or before May 1, 1950, he has been at all times and is at present totally disabled within the meaning of the said policies of insurance.

Judgment was entered in favor of Sommers and against Prudential in the sum of $8,648.43 plus costs, and the court decreed that Prudential reinstate the waiver of premium benefits and to continue such benefits so long as Sommers remains unable to perform any work and engage in any business for remuneration or profit; and enjoined Prudential from accepting or demanding premiums from Sommers on said policies so long as he remains totally disabled.

Counsel for Prudential present their argument for reversal under three captions as follows:

"I. The trial court erred in entering judgment for the plaintiff because the judgment is not supported by the admissible evidence.

"II. The plaintiff failed to sustain the burden of proving his claim, and judgment should have been entered for the defendant.

"III. The trial court erred in its rulings during the trial with respect to examination of Paul R. Peak."

The insurance policies involved herein contain the following:

"Upon receipt at the Home Office of due proof of the total and permanent disability of the Insured, the Company will waive the payment of certain premiums otherwise payable under this Policy, subject, however, to all the provisions, conditions, and limitations hereinafter stated in paragraphs (a) to (g) inclusive.

"(b) *Total Disability.* Total disability, within the meaning of these provisions, is incapacity of the In-

sured, resulting from disease or bodily injury (not wilfully and intentionally self-inflicted), to perform any work or engage in any business or occupation for remuneration or profit. The benefits of these provisions shall not be allowed * * * if during any period for which such benefits are claimed the Insured has been engaged in any business or occupation for remuneration or profit."

In *Guardian Life Insurance Company of America v. McMurry,* 105 Colo. 11, 94 P. (2d) 1086, the court considered a provision of an insurance policy which conferred benefits upon the insured in the event of total and permanent disability, by which the insured was prevented "from performing any work or from following any occupation whatsoever for remuneration or profit * * * ." The court there said, inter alia:

" * * * The disability clause of the policy does not require more than that he be 'permanently continuously, and wholly prevented thereby from following any occupation whatever for remuneration or profit.' Men do not employ permanent cripples to drive their cars or trucks, and assume the hazards of, and responsibility for, their incompetent acts. They do not employ men who, because of physical handicaps, can operate only fifty per cent efficiently the tools and instrumentalities with which the work they are employed to do is carried on, and the jury was warranted in concluding from the evidence that plaintiff was in such physical condition that he could not obtain employment at anything he could do, and that if he was employed in any capacity that he could not do the work in the manner required of those who are regularly and ordinarily employed and remunerated for such services. If he could not obtain work he was fitted to do because of his diseased condition or if, for the same reason after securing it, he could not 'deliver the goods,' to use a common expression, then his diseased condition prevented him from following any occupation that he could follow if not diseased, for remuneration or profit.

This was one of the contingencies against which the plaintiff was insured."

In *Guardian Life Insurance Company of America v. Kortz,* 109 Colo. 331, 125 P. (2d) 640, the identical clause involved in the McMurry case, supra, was again before this court. From the opinion in the Kortz case we quote:

" * * * In other words, we held that totality of disability, within the intent and meaning of the contract, need not be determined in the absolute sense, but only in the relative sense that it is total if it wholly prevents one from performing any work *or* from following any occupation for remuneration or profit. In the McMurry case we held the evidence disclosed that plaintiff was unable, by reason of the disability proven, to follow any occupation for remuneration or profit, and hence that totality of disability was shown within the requirements of the policy. We think this is a reasonable and logical resolution of the conflict that ordinarily exists between the agent's selling construction and the claim agent's settling construction of such clauses."

Bearing in mind the above interpretation of the language " * * * from performing any work or from following any occupation for remuneration or profit," we direct specific attention to its similarity to the provision of the policies in the instant case. Here the disability must be such as to result in incapacity " * * * to perform any work or engage in any business or occupation for remuneration or profit." In legal significance there is no difference in the language of the policies considered in the cases cited and that in the present action. The construction applied in the cited cases is applicable here.

The assertion of counsel for Prudential that "the judgment is not supported by the admissible evidence" is grounded on the contention that the testimony of Dr. Kenneth Loder and that of the witness Mary Minor should not have been received. It is argued that, if this evidence is stricken, what remains would be insufficient

as a matter of law to sustain the judgment. This is tantamount to admitting that if the evidence of Dr. Loder and Mary Minor was properly received and considered by the trial court, then the judgment should be affirmed. Dr. Loder is a psychiatrist whose qualifications were admitted. Mary Minor is a "clinical psychologist" for the State Deaf and Blind School in Colorado Springs. She testified concerning her training and experience which without question qualified her as an expert in her field.

The record discloses that Dr. Loder examined Sommers at the request of Prudential and that the purpose of said examination was to determine his mental condition as bearing upon the question of whether he could engage in any business for remuneration or profit. During the course of this examination Dr. Loder requested an analysis of Sommers' condition by Mary Minor, the psychologist. She conducted an examination of plaintiff and subjected him to certain tests which she described in some detail. Some of these tests were conducted in the presence of Dr. Loder. She submitted a written report and testified from the witness stand concerning her conclusions based upon her complete examination of the patient. Dr. Loder and Mary Minor, in succinct substance, reached the conclusion that the mental condition of Mr. Sommers at the time Prudential demanded the resumption of payment of premiums and at the time of the trial, was such that he could not engage in any business or occupation for remuneration or profit.

The report made by Dr. Loder to Prudential, to which he adhered in his testimony, after observing Sommers at the trial and after hearing his testimony, contained the following:

"We are dealing with an individual who was at one time very intelligent and apparently successful. He developed a severe endogenous and activated depression for which he sought treatment but which to date, in my

opinion, has not changed the course of his depression markedly and he has a personality deterioration with impairment of judgment and intellectual functioning. This is confirmed by his psychological studies. Presenescence and organic factors have contributed and the process is apt, in my opinion, to be progressive. Prognosis is guarded and he should have, in my opinion, supportive psychotherapy. * * * .

"Considering the psychiatric, psychological, neurological and physical defects in this individual it is my impression that he certainly could not return to the work he was accustomed to doing. His progressive impairment of intellectual functioning with impairment of judgment would not be conducive to work requiring these faculties. His physical limitations are, in my opinion, real and would prevent him from working in a physical capacity. It is my impression that this individual cannot now or be expected in the future to engage in any consistent productive or remunerative employment for himself or others. He should, in my opinion, have continual psychiatric and neurological follow up and support."

The payment of premiums was waived by Prudential in 1950 because of "total and permanent" mental disability. In January 1951 Dr. Davis, who examined Sommers at the request of Prudential, reported that he was:

" * * * suffering from a chronic depression of sufficient degree to render him incapable of resuming business activities or of being self-supporting. I would consider him to be totally and permanently disabled on this basis. As to prognosis, it seems unlikely to me that he will ever recover sufficiently to be self-supporting again. I should think there might still be some superficial improvement, but I doubt that he will actually recover from the elements of a chronic depression."

Dr. Loder stated he found the same condition described by Dr. Davis " * * * with some other things added to

it." These added complications appeared "because of the fact of deterioration" since 1951.

We need not further consider the substance of the testimony given by Dr. Loder or Mary Minor. The objections made to the admission of the testimony are applicable to both. It is argued that:

"The testimony of these two witnesses was based upon examinations they made of Sommers for the purpose of trial only and not for the purposes of treatment."

Counsel rely heavily on *Preveden v. Metropolitan Life Insurance Company*, 200 Minn. 523, 274 N. W. 685, in which an asserted disability arising from deafness was in question. There it was held error to admit evidence of a doctor who examined the patient only for the purpose of trial. The court said:

"The danger of admitting such testimony is apparent. When a doctor is consulted for the purpose of treatment, it may safely be assumed that the patient will tell the truth to the doctor since he is interested primarily in being cured. However, when he goes to a doctor for the purpose of qualifying the latter to testify, the natural tendency and inducement would be to the contrary.

"The same might be said for the tests given by Dr. Hayden to the plaintiff. They were not for the purpose of enabling him to treat the plaintiff, and they depended almost entirely upon the subjective reactions of the patient. While the opinion of the doctor based thereon might be entirely correct, there is no method of determining if the reactions themselves were bona fide or feigned."

This court has not passed upon the precise question of whether the testimony of a physician, who conducts a medical examination for the purpose of trial only and not for the purpose of treatment, is precluded from giving testimony if, in reaching his conclusion, he relies on the truth of oral statements made to him by the patient. This question, as related to a physical disability, is not raised by this record.

■ In the present case we are concerned with a mental disability. In such a case the statements made by the patient to the doctor are not offered as proof of the truth of the thing asserted. The hearsay rule, or the rule excluding self serving declarations, is not applicable to a situation where the ex parte statement is offered for some purpose other than proving the truth of the thing asserted. The fact that a particular statement was made under particular circumstances may be relevant to establish a mental condition without reference to the truth or falsity of the thing asserted. In an inquiry into a mental case we have a far different situation than that presented in the *Preveden* case. In the instant case the truth or falsity of whatever Sommers might have told Dr. Loder or Mary Minor is of no material moment. We are not dealing with a situation in which a litigant is able to relate a false history of *physical disability* in order to obtain a favorable diagnosis.

■ Other factors enter into our consideration of the problem which we will not treat at length, but which when measured in the light of the foregoing discussion justify the conclusion we reach. We point out that the testimony, to which objection is made, was made available as the result of a psychiatric examination demanded on behalf of Prudential as an adverse party. If the result had been to its liking are we to understand that defendant would contend the doctor was disqualified to express his opinion? It is clear that the evidence in dispute was based upon observation of Sommers at the trial; upon the testimony which he gave on the witness stand with reference to the history of his disability, as well as upon objective tests and observations conducted by the witnesses.

There is support for our conclusion in *Putney v. United States,* 4 F. Supp. 376 (Colo. 1933); and *United States v. Roberts,* 62 F. (2d) 594 (Tenth Circuit—Colo.).

The trial court did not err in permitting counsel for

222

Sommers to propound leading questions to the witness Paul R. Peak as an adverse party.

The judgment is affirmed.

MR. CHIEF JUSTICE HALL and MR. JUSTICE FRANTZ concur.