The PEOPLE of the State of
Colorado, Petitioner,

v.

Dwight Allen BOWERS, Respondent.

No. 89SC43.

Supreme Court of Colorado,
En Banc.

Nov. 13, 1990.

Rehearing Denied Dec. 10, 1990.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Denver, for petitioner.

Richard A. Hostetler, Sp. Deputy Public Defender, Denver, for respondent.

Justice QUINN delivered the Opinion of the Court.

We granted the People's petition for certiorari to review the court of appeals' decision in *People v. Bowers,* 773 P.2d 1093 (Colo.App.1988), which reversed the conviction of the defendant, Dwight Allen Bowers, for aggravated incest and sexual assault, and remanded the case to the district court for a new trial because of the erroneous admission into evidence of the unavailable child-victim's hearsay statements describing the sexual acts allegedly committed against the child. In reaching this result, the court of appeals held that the People failed to establish the necessary foundational requirements for admitting the child's hearsay statements into evidence under the residual hearsay exceptions created by CRE 803(24) and CRE 804(b)(5) and also failed to satisfy the "reliability" and "corroborative evidence" foundational requirements for admitting the statements under section 13–25–129, 6A C.R.S. (1987). We hold that the only basis for admitting the unavailable child-victim's hearsay statements is section 13–25–129 and that, although the "reliability" requirement of the statute was satisfied, the People failed to establish the statutory requirement that there be "corroborative evidence of the act which is the subject of the [child's] statement." We accordingly affirm the judgment of the court of appeals.

## I.

The defendant was charged with the class 3 felonies of aggravated incest[1] and sexual assault by one in a position of trust.[2] Both offenses were alleged to have been committed against the defendant's three-year-old daughter, whom we will refer to as K.B., between March 14 and April 16, 1985. The prosecution's case was based on statements made by K.B. to several other persons, in which K.B. described the sexual acts committed against her.

At the commencement of the trial, the district court, outside the presence of the jury, conducted a hearing for the purpose of determining the admissibility of K.B.'s hearsay statements. The prosecution offered such statements under the residual hearsay exception created by CRE 803(24) for both available and unavailable witnesses, the residual hearsay exception created by CRE 804(b)(5) for unavailable witnesses, and the statutory exception created by section 13–25–129, 6A C.R.S. (1987), for a child-victim of a sexual assault. At the outset of the hearing, the prosecution called K.B. to the witness stand. The prosecuting attorney asked K.B., who was then four and one-half years old, very basic questions, such as her name, age, and whether she could identify her parents in the courtroom. The child answered these questions but only with great reluctance and by nodding. The trial court, after observing K.B.'s behavior on the witness stand, determined that the child was not competent to testify at trial.

The prosecution then made an offer of proof with respect to the child's statements. The offer of proof closely paralleled the evidence later admitted at trial and outlined the following sequence of events. On April 16, 1985, a fifteen-year old babysitter was caring for K.B. and her younger brother. While the babysitter was changing the younger brother's diaper, K.B. spontaneously pointed to the brother's penis and said her father "had one just like that but it was bigger and he hurts me with it." The babysitter asked K.B. where her father had hurt her, and the child pointed to her vaginal area and said that it happened in the tub and in the car when she was naughty. The babysitter reported this incident to the babysitter's mother, who then questioned K.B. and received similar responses from the child.

1. § 18–6–302, 8B C.R.S. (1986).

2. § 18–3–405, 8B C.R.S. (1986).

The babysitter's mother took K.B. to the local police station where the child was interviewed by a police detective experienced in the investigation of sexual assaults on children. The detective reviewed with the child the body parts of male and female anatomical dolls. The male doll had a penis and the female doll had breasts and a vagina. The child referred to the penis of the male doll as "boney." When K.B. identified the penis of the male doll during the course of the interview, she made a statement to the effect that her father "had one too" but that "his was bigger" and that "she was hurt down there," pointing to her vaginal area. When the detective asked K.B. how her father had hurt her, K.B. demonstrated with the dolls by placing the male doll on top of the female doll and putting the penis of the male doll on the vaginal area of the female doll. K.B. also stated that the defendant "peed" on her, and then, gesturing by pointing to her mouth, stated, "Dwight [the defendant] put his boney." K.B. told the detective that these events occurred at the defendant's house.[3] The next day, K.B. was taken to a county health department office, where she was examined by a pediatric nurse. The nurse found no soreness or irritation in the vaginal area.

Subsequently, a foster care program coordinator for the county department of social services drove K.B. and her younger brother to a foster care home. During the offer of proof, the prosecuting attorney did not describe in detail the contents of the foster care program coordinator's testimony, but rather referred to the contents of the coordinator's statement that previously had been disclosed to defense counsel. According to the coordinator's statement, as they drove to the foster home, K.B. spontaneously said, "I don't like boneys." When the coordinator asked K.B., "What are boneys?", K.B. responded: "You know, I don't like boneys. I don't like Daddy to put his boney on me. Daddy puts his boney on me."

During the next year K.B. went to regular weekly therapy sessions with a family therapist or counselor, who had a Master's Degree in Social Work and counseled persons on a variety of family problems, at a county mental health center. As in the case of the coordinator's testimony, the prosecuting attorney, during the offer of proof, referred to the contents of the counselor's statement that previously had been disclosed to defense counsel. The counselor used a play therapy room in which anatomical dolls depicting male and female sexual organs were available to K.B. After about a month of counseling, K.B. said to the counselor that "Daddy hurt me down there" and pointed to her vagina. The counselor and K.B. undressed the anatomical dolls, and the counselor asked K.B. to describe what happened by using the dolls. K.B. put the male and female dolls together and said it hurt and made her cry, and that she wanted to throw her father in the snow for being naughty. The counseling sessions continued for a year and, according to the counselor, K.B. mentioned the sexual assault approximately fifteen times during this period. At one of the counseling sessions K.B. gestured by putting her finger in her mouth in order to indicate that the defendant had put his penis in her mouth during one of the incidents.

After considering the prosecution's offer of proof and the arguments of counsel, the trial court overruled the defendant's objection to the child's statements and ruled them admissible under CRE 803(24) and CRE 804(b)(5). The court also ruled that the child's statements satisfied the admissibility standards of section 13–25–129 because, as stated by the court, "the time, content, and circumstances of the statements provided sufficient safeguards of reliability" and there was corroborative evidence of the act which the child described by reason of the child's use of anatomical dolls and gestures describing the sexual offense to the other persons.

---

**3.** The evidence at trial established that during the period between March 14 and April 16, 1985, the time frame in which the offenses allegedly were committed, K.B.'s mother was under treatment at the state hospital for a mental illness and the child was in the custody of the defendant.

The prosecution's evidence at trial consisted essentially of the evidence summarized in its offer of proof. The defendant testified on his own behalf and denied that he ever sexually assaulted K.B. The jury found the defendant guilty of both charges, and the court imposed concurrent terms of four years on each count.

On appeal, the court of appeals reversed the conviction and remanded for a new trial. In the court of appeals' view, the trial court erred in several particulars: first, in determining that the child's hearsay statements satisfied the circumstantial guarantees of trustworthiness required by CRE 803(24) and CRE 804(b)(5); second, in failing to specify the reason for finding that K.B. was not competent to testify as a witness; third, by failing to identify the specific factors which rendered the child's statement reliable for purposes of section 13–25–129(1)(a); and fourth, by ruling that the child's use of anatomical dolls and gestures satisfied the requirement of section 13–25–129(1)(b)(II) that there be "corroborative evidence of the act which is the subject of the statement." We granted the People's petition to review the propriety of the court of appeals' resolution of this case.

## II.

Prior to addressing the admissibility of the child's statements, we address two preliminary issues which are closely tied to the principal questions before us. Both of these matters relate to the meaning and scope of section 13–25–129, which states, in pertinent part, as follows:

(1) An out-of-court statement made by a child, as child is defined under the statutes which are the subject of the action, describing any act of sexual contact, intrusion, or penetration, as defined in section 18–3–401, C.R.S., performed with, by, on, or in the presence of the child declarant, not otherwise admissible by a statute or court rule which provides an exception to the objection of hearsay, is admissible in evidence in any criminal ... proceeding[ ] in which a child is a victim of an unlawful sexual offense, as defined in section 18–3–411(1), C.R.S. ... if:

(a) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(b) The child either:

(I) Testifies at the proceedings; or

(II) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement.

(2) If a statement is admitted pursuant to this section, the court shall instruct the jury that it is for the jury to determine the weight and credit to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, and any other relevant factor.

(3) The proponent of the statement shall give the adverse party reasonable notice of his intention to offer the statement and the particulars of the statement.

The first question pertains to the effect of section 13–25–129 on the residual hearsay exceptions created by CRE 803(24) and CRE 804(b)(5). The second question is whether an appellate court, in reviewing a trial court's evidentiary ruling pursuant to section 13–25–129, should limit itself to the offer of proof made by the proponent of the child's statements and the trial court's ruling thereon or, instead, may consider the entire trial record in support of the trial court's ruling.

### A.

We consider first the effect of section 13–25–129 on CRE 803(24) and CRE 804(b)(5). CRE 803(24) creates a residual hearsay exception for a statement made by a declarant, even though the declarant is available as a witness, when the statement has "circumstantial guarantees of trustworthiness" equivalent to other hearsay exceptions created by the Colorado Rules of Evidence, and when the trial court finds that:

(A) the statement is offered as evidence of a material fact; (B) the statement is

more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

CRE 804(b)(5) creates a similar residual hearsay exception when the declarant is unavailable, when the statement has "circumstantial guarantees of trustworthiness," and when the trial court makes the identical findings applicable to CRE 803(24).

The statutory hearsay exception created by section 13–25–129 applies only when the child's statement is "not otherwise admissible by a statute or a court rule which provides an exception to the objection of hearsay." We recently discussed the purpose and scope of this statutory hearsay exception in *People v. Diefenderfer*, 784 P.2d 741, 746–53 (Colo.1989). We noted that the statute attempts to effectuate the dual goals of protecting child-victims of sexual offenses by creating a special hearsay exception for the child's out-of-court statements regarding a sexual offense and of safeguarding the right of an accused, in a manner consistent with the United States and Colorado Constitutions, to confront the witnesses testifying against him. *See generally* Graham, *Indicia of Reliability and Face to Face Confrontation: Emerging Issues in Child Sexual Abuse Prosecutions*, 40 U.Miami L.Rev. 19, 58–61 (1985); Comment, *Confrontation of Child Victim–Witnesses: Trauma, Unavailability, and Colorado's Hearsay Exceptions for Statements Describing Sexual Abuse*, 60 U.Colo.L.Rev. 659 (1989). It was in light of these dual purposes that we held that section 13–25–129, rather than the residual hearsay exception of CRE 803(24), provides "the sole basis upon which hearsay evidence, which otherwise comes within the terms of that statute, may be admitted."

*Diefenderfer*, 784 P.2d at 752. The reasoning of *Diefenderfer* applies equally to the residual hearsay exception created by CRE 804(b)(5) for an out-of-court statement by an unavailable declarant. We conclude, therefore, that section 13–25–129 constitutes the exclusive basis for admitting a child-victim's hearsay statement of a sexual act committed against the child when such hearsay statement is not otherwise admissible under any other specific hearsay exception created by statute or court rule.[4]

### B.

The next question is whether an appellate court, in reviewing a trial court's evidentiary ruling under section 13–25–129, should be limited to the proponent's offer of proof made at the hearing outside the presence of the jury and the trial court's ruling thereon or, instead, may consider the entire evidence admitted during the trial in support of the evidentiary ruling. The purpose of the statutory requirement that a court conduct a hearing outside the presence of the jury before ruling on the admissibility of a child-victim's statement is to permit the proponent of the statement to establish, by offer of proof, that, as stated in subsection 13–25–129(1)(a), "the time, content, and circumstances of the statement provide sufficient safeguards of reliability" and, as stated in subsection 13–25–129(1)(b)(II), in the case of an unavailable child victim that "there is corroborative evidence of the act which is the subject of the statement." The trial court may permit the offer of proof to be presented in the form of a summary of particular testimony or may require the proponent of the evidence to make the offer in question and answer form. CRE 103(b).

▪ Under the Colorado Rules of Evidence, when an objection is made to evidence on relevancy grounds and the rele-

---

**4.** If, of course, the child-victim's statement qualifies for admission under a specific hearsay exception—for example, an excited utterance, CRE 803(2), a statement of a then existing mental, emotional, or physical condition, CRE 803(3), or a statement for purposes of medical diagnosis or treatment, CRE 803(4)—the re-

quirements of section 13–25–129 should never come into play. In the instant case, however, the prosecution's offer of proof was directed solely to the residual hearsay exceptions of CRE 803(24) and CRE 804(b)(5) and the statutory exception created by section 13–25–129.

vancy of the evidence depends upon the fulfillment of a condition of fact, the trial court can admit the evidence upon or subject to "the introduction of evidence sufficient to support a finding of the fulfillment of the condition." CRE 104(b). In contrast to the conditional admissibility sanctioned by the Colorado Rules of Evidence, the plain terms of section 13–25–129(1)(a) require the trial court to make findings on whether the statutory conditions of admissibility have been established *before* the statement is admitted into evidence.

■ In prior decisions we have addressed the standard of proof applicable to preliminary questions of admissibility where, as here, the responsibility for determining such questions is reposed exclusively in the trial court. We have held that the standard of proof applicable to these evidentiary questions is the preponderance of evidence standard. *People v. Romero*, 745 P.2d 1003, 1016 (Colo.1987) (preponderance of evidence standard applicable to trial court's determination of whether posthypnotic testimony of witness sufficiently reliable to be admissible); *People v. Montoya*, 753 P.2d 729, 733 (Colo.1988) (preponderance of evidence standard applicable for trial court's resolution of preliminary questions of admissibility for co-conspirator's statement under CRE 801(d)(2)(E)). The fact that section 13–25–129 requires the trial court to make findings on the evidentiary conditions of admissibility provides substantial reason for applying that standard to a child-victim's hearsay statement offered under the statute. The preponderance of evidence standard, therefore, applies to a trial court's ruling on whether the statutory conditions for admitting a child's hearsay statement under section 13–25–129 have been satisfied.

■ The text of section 13–25–129 also contemplates that the trial court's ruling, which obviously will affect the trial preparation of the party adversely affected by the ruling, will be based solely on those matters presented to the court at the *in-limine* hearing. Indeed, if this were not the legislative intent, the *in-limine* hearing would serve no purpose at all and there

would be no reason for mandating it by statute. In order to enhance effective appellate review of the trial court's evidentiary ruling, therefore, the trial court should state on the record its findings with respect to the following conditions of admissibility: first, the specific factors, if any, relating to the "time, content, and circumstances" of each statement that "provide sufficient safeguards of reliability" pursuant to subsection (1)(a) of the statute; second, if the court determines that the child-victim is unavailable as a witness, the specific factors rendering the child unavailable; and third, if the child's statement is ruled admissible, the nature of the "corroborative evidence of the act which is the subject of the statement" in keeping with subsection (1)(b)(II). We intend these requirements to apply to cases tried subsequent to the effective date of this opinion.

■ In light of our interpretation of the statutory scheme as imposing the obligation on the trial court to determine the admissibility of the child's statement on the basis of matters presented to the court during the *in-limine* hearing, it follows that any appellate review of the trial court's ruling should be based on the record made at the *in-limine* hearing. We emphasize that the standard of review we herein adopt is calculated to enhance an appellate court's ability to resolve evidentiary issues arising under section 13–25–129, and is not intended to abrogate the long-standing rules of harmless error or plain error. An appellate review of the correctness of the trial court's ruling, therefore, may go beyond the record of the *in-limine* hearing only if an issue of harmless error or plain error is raised. Under harmless error analysis, a trial court's erroneous evidentiary ruling that does not affect a substantial right of a party is to be disregarded. CAR 35(e); CRE 103(a). Thus, when a party makes a contemporaneous objection to a child's statement offered under section 13–25–129, and the trial court erroneously admits or excludes the statement, the trial court's evidentiary ruling will be deemed harmless only if a reviewing court can say with fair assurance that,

in light of the entire record at trial, the error did not substantially influence the verdict or impair the fairness of the trial. *See King v. People,* 785 P.2d 596, 605 (Colo.1990); *People v. Gaffney,* 769 P.2d 1081, 1089 (Colo.1989). If, of course, a party fails to make a contemporaneous objection to the evidentiary ruling, then the plain error standard of review is applicable. Plain error is limited to those circumstances in which "an appellate court, after reviewing the entire record, can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Wilson v. People,* 743 P.2d 415, 420 (Colo. 1987).

With these preliminary matters aside, we turn to the main question before us—that is, whether the trial court erred in admitting K.B.'s statements into evidence under section 13–25–129. The court of appeals held that the trial court erred in the following three respects: first, in failing to specify the reason for finding that K.B. was not competent; second, in failing to identify the specific factors on which it based its finding that K.B.'s statements were reliable;[5] and third, by ruling that K.B.'s use of anatomical dolls and gestures in describing the sexual acts committed against her constituted corroborative evidence of the act described in the child's statement. We shall address each aspect of the evidentiary issue separately.

## III.

We direct our attention to the question of K.B.'s incompetency. In a criminal prosecution for a sexual offense, a child under ten years of age is considered competent to testify as a witness as long as the child is "able to describe or relate in language appropriate for a child of that age the events or facts respecting which the child is examined." § 13–90–106(1)(b)(II), 6A C.R.S. (1987 & Supp.1990); *see People v. District Court,* 791 P.2d 682 (Colo.1990). This statutory requirement, of course, assumes that the child was physiologically capable of apprehending or perceiving the facts or events about which the child is to be examined. In holding that the trial court erred in failing to identify the specific reason for K.B.'s incompetence, the court of appeals remarked that "[i]f [K.B.'s] incompetency rested upon her inability, at the time of the alleged act, to receive just impressions of fact, her statements may be inherently unreliable for any purpose," but, on the other hand, "if [K.B.'s] incompetence was caused only by her fear or inhibition in the courtroom setting, her out-of-court statements nevertheless may have been inherently trustworthy." *Bowers,* 773 P.2d at 1096. We agree with these observations. A finding, for example, that a very young child is incompetent to testify because of the child's reluctance to answer questions in a formal courtroom environment does not necessarily impair any particularized guarantees of reliability that otherwise inhere in a child's hearsay statement. *See Oldsen v. People,* 732 P.2d 1132, 1135 n. 6 (Colo.1986) (finding of incompetence to testify does not automatically render a child's hearsay statements inadmissible, as long as its reliability is ensured by circumstances bringing it within a hearsay exception); *Lancaster v. People,* 200 Colo. 448, 453–54, 615 P.2d 720, 723–24 (1980) (testimonial incapacity of very young child did not affect applicability of *res gestae* exception to child's hearsay statement).[6] We further

---

5. The court of appeals also held that the trial court erred in failing to make fact-specific findings with respect to the "circumstantial guarantees of trustworthiness" required by CRE 803(24) and CRE 804(b)(5). However, our holding in Part IIA, *supra,* that section 13–25–129 constitutes the exclusive basis for admitting a child victim's hearsay statement of a sexual act committed against the child when, as here, such statement is not otherwise admissible under any other hearsay exception created by statute or court rule, renders it unnecessary for us to address this aspect of the court of appeals' opinion.

6. We note in passing that in *Idaho v. Wright,* —— U.S. ——, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), the United States Supreme Court addressed the problem of a child-witness's ability to communicate to the jury at the time of trial and in the context of the confrontation rights of the accused. The Court noted that "[a]lthough [the child's] inability might be relevant to

agree with the court of appeals that, in keeping with section 13–25–129, the trial court should have specified the reason why it found K.B. not competent to testify. We are satisfied, however, that the record of the *in-limine* hearing shows that the trial court's determination that K.B. was not competent, and hence was unavailable as a witness, was based on K.B.'s reluctance to communicate in the formal courtroom setting in which the child was placed.

■ At the *in-limine* hearing, the prosecuting attorney asked K.B. very basic questions concerning her name, age, and whether she could identify her parents. K.B. did not respond initially to the questions, but then nodded affirmatively or negatively when the questions were asked again. After K.B.'s brief appearance on the witness stand, the prosecuting attorney asserted to the court that the child was "in an environment which is foreign to her" and thus was unable to answer questions. Defense counsel acquiesced in the prosecuting attorney's assessment of the witness, as did the trial court. Although the trial court should have been more specific in identifying on the record the specific basis for its finding of incompetency, the record contains no suggestion whatever that the court found K.B. incompetent due to an inability to receive just impressions of fact. On the contrary, what the record strongly suggests is that K.B.'s reluctance to orally respond to questions was due to the child's nervousness or fright occasioned by the formal courtroom environment. Moreover, the trial court had the opportunity to view the demeanor of K.B., *see e.g.*, *Marn v. People*, 175 Colo. 242, 486 P.2d 424 (1971) (competence of child-witness is question addressed to sound discretion of trial court), and we have no reason to believe that the trial court would have proceeded to consider and uphold the reliability of child's hearsay statements if the court had any lingering doubt about the

child's capacity to apprehend or perceive. We thus conclude that, while the trial court should have been more precise in its ruling on K.B.'s competency, nothing of record suggests that the child was incompetent by reason of some inherent incapacity to receive just impressions of facts or events.

## IV.

■ We next consider whether the trial court erred in failing to identify the specific factors on which it based its finding that K.B.'s statements were reliable. The trial court, in conclusory fashion, ruled that "the time, content, and circumstances of [K.B.'s] statements as described by [the prosecuting attorney] provide sufficient guarantees of reliability." The court of appeals invalidated the trial court's ruling because, in its view, "the findings and the offer of proof are insufficient to meet the statutorily mandated safeguards of reliability for each statement." *Bowers*, 773 P.2d at 1097. In taking issue with the court of appeals' analysis, the People argue that the offer of proof adequately supports the trial court's ruling on the reliability of the child's statements. Although we agree with the court of appeals that the trial court did not adequately identify the specific factors relating to "time, content, and circumstances" that provided sufficient guarantees of reliability for each of K.B.'s statements, we nonetheless conclude that the prosecuting attorney's offer of proof was sufficiently specific to cure the deficiency in the trial court's ruling on reliability.

In *People v. District Court*, 776 P.2d 1083, 1089–90 (Colo.1989), we stated that the following factors, while not intended as "an immutable set of standards for the trial court in determining that the rather amorphous standard of 'sufficient indicia of reliability' has been met," nonetheless provide some guidance and direction on the question of reliability:

whether the earlier hearsay statement possessed particularized guarantees of trustworthiness, a *per se* rule of exclusion would not only frustrate the truth-seeking purpose of the Confrontation Clause, but would also hinder States in their own 'enlightened development in the law of

evidence.'" 110 S.Ct. at 3151–52. The issues raised in the instant case, of course, are evidentiary in nature and do not directly involve constitutional confrontation under either the federal or state constitution.

(1) Whether the statement was made spontaneously;

(2) whether the statement was made while the child was still upset or in pain from the alleged abuse;

(3) whether the language of the statement was likely to have been used by a child the age of the declarant;

(4) whether the allegation was made in response to a leading question;

(5) whether either the child or the hearsay witness had any bias against the defendant or any motive for lying;

(6) whether any other event occurred between the time of the abuse and the time of the statement which could account for the contents of the statement;

(7) whether more than one person heard the statement; and

(8) the general character of the child.[7]

The prosecuting attorney's offer of proof showed that two of K.B.'s statements, each of which was most damaging to the defendant, were made spontaneously without prompting or suggesting. The first statement—"my daddy has one just like that but it's bigger and he hurts me with it"— was made to the babysitter on April 16, 1985, while K.B. watched the babysitter change the diapers on K.B.'s younger brother. Within the next few days, K.B. also made a spontaneous statement to the foster care program coordinator. The prosecuting attorney informed the trial court, during the offer of proof, that the coordinator's written statement describing K.B.'s statement had been disclosed to defense counsel prior to the *in-limine* hearing. According to the offer of proof, when the coordinator drove K.B. and her younger brother to a foster care home, K.B. spontaneously said, "I don't like boneys." When the coordinator asked K.B., "What are boneys?," K.B. stated, "I don't like Daddy to put his boney on me."

The offer of proof further showed that, although on one occasion K.B.'s statement was made in response to questioning by a police officer and several others were made in response to questions by the family therapist or counselor, K.B. used what can be considered age-appropriate terminology for her very young years. In some circumstances the sexual terminology employed by a young child in describing a sexual offense can lend some measure of reliability to the child's statement. K.B. also, at times, used anatomical dolls in describing the sexual acts committed against her.[8] We also note that the counselor's written report, along with other discovery materials, was made available to defense counsel sometime prior to the *in-limine* hearing, and that defense counsel did not contest the factual contents of the child's statements described in the offer of proof. Finally, nothing in the prosecution's offer of proof suggested that K.B. had any bias against the defendant or any motive for lying, or that perhaps some other event had occurred that might have accounted for K.B.'s statements.

In light of the prosecution's offer of proof, the factual contents of which were not controverted during the *in-limine* hearing, we are satisfied that, although the trial court should have identified the specif-

---

**7.** In *Idaho v. Wright,* —— U.S. ——, 110 S.Ct. 3139, 3150, 111 L.Ed.2d 638 (1990), the United States Supreme Court offered the following list of factors, expressly intended as nonexclusive, for determining whether a child's hearsay statement contained particularized guarantees of trustworthiness: the spontaneity and consistent repetition of the statement; the mental state of the child-declarant; the child's use of terminology unexpected of a child of similar age; and the child's lack of motive to fabricate. In addition to emphasizing that these factors are not exclusive of the issue, the Supreme Court also mentioned that courts "have considerable leeway in their consideration of appropriate factors."

**8.** The use of anatomical dolls as an aid in interviewing a child concerning a sexual assault allegedly committed against the child is not without controversy. One commentator, while acknowledging that the careful use of anatomical dolls seems an appropriate procedure in many cases of reported sexual abuse, has observed that such a procedure "appears to be an ad hoc variant of play therapy" with "little or no critical attention or testing for possible suggestive effects." Christiansen, *The Testimony of Child Witnesses: Fact, Fantasy, and the Influence of Pretrial Interviews,* 62 Wash.L.Rev. 705, 711 n. 29 (1987). Nothing in the record before us indicates that the dolls were used in a suggestive fashion in the course of the interviews.

ic factors relating to "time, content, and circumstances" that provided sufficient guarantees of reliability for each of K.B.'s statements disclosed in the offer of proof, there nonetheless was an adequate factual basis in the offer of proof to support the trial court's determination that K.B.'s statements satisfied the reliability requirement of subsection 13–25–129(1)(a).

## V.

Reliability is not the only condition of admissibility required by section 13–25–129. The statute also requires that there be corroborative evidence of the act described by the child in the hearsay statement. In reversing the judgment of conviction and remanding the case for a new trial, the court of appeals held that the trial court erred in ruling that K.B.'s use of anatomical dolls and her gestures during interviews with the police officer and the family therapist or counselor satisfied the corroborative-evidence requirement of the statute. In reaching this conclusion, the court of appeals reasoned that K.B.'s use of the dolls and her gestures constituted "nonverbal conduct intended to be communicative," *see* CRE 801(a), and thus were inadmissible hearsay in the absence of corroborative evidence. *Bowers*, 773 P.2d at 1097. In challenging this part of the court of appeals' decision, the People raise two alternative arguments. The People first argue that the child's use of the dolls and the child's gestures during interviews with the police officer and the counselor were not hearsay and hence satisfied the corroborative-evidence requirement of the statute. The People alternatively contend that, even if considered hearsay, the trial court nonetheless properly considered such hearsay as corroborative evidence of the act described in the child's statement, since under CRE 104(a) and CRE 1101(d)(1) a trial court is not bound by the formal rules of evidence in determining a preliminary question concerning the admissibility of evidence. An analysis of the text and purpose of section 13–25–129 convinces us that the court of appeals properly resolved this issue.

## A.

Section 13–25–129(1)(b)(II) expressly provides that where, as here, the child-victim of a sexual assault is unavailable as a witness, the trial court must find, in a hearing conducted outside the presence of the jury, that "there is corroborative evidence of the act which is the subject of the [child's] statement." The "corroborative evidence" requirement is thus directed at the sexual act described in the child's statement and not at the identity of the perpetrator. Although the statute does not define corroborative evidence, we recently considered the general sense of that term in *Stevens v. People*, 796 P.2d 946 (Colo. 1990). In *Stevens* a majority of this court, in separate opinions, acknowledged that the term "corroborative evidence" means evidence, whether direct or circumstantial, that tends to establish the fact sought to be proved—namely, the sexual offense described in the child's statement—and that the quantum of corroborative evidence needed to support the admission of a child's hearsay statement "must be enough to induce a person of ordinary prudence and caution conscientiously to entertain a reasonable belief that the sexual abuse that is the subject of the child's hearsay statement occurred." Vollack, J., at 952–953 (joined by Rovira, C.J., and Mullarkey, J.); *see also* Lohr, J., at 957 (special concurring opinion, joined by Quinn, J.). In *Stevens*, however, we did not attempt to determine the precise scope of the corroborative-evidence requirement, nor did we delineate the various forms of corroborative evidence that might satisfy the statutory requirement. We did not address these matters because the record demonstrated that there indeed was corroborative evidence in the form of expert testimony establishing that the two child-victims of the sexual crimes had undergone significant behavioral changes subsequent to the offenses and that such changes were consistent with post-traumatic stress resulting from a sexual assault. Because of the existence of this corroborative evidence, it was unnecessary for us to consider whether a child's use of anatomical dolls, and, as here, any incidental ges-

turing by the child in describing a sexual assault, "may supply corroboration of a child's hearsay statement pursuant to § 13–25–129(1)(b)(II)." Vollack, J., at 955 n. 8. It is that question, unanswered in *Stevens*, that is directly before us in this case.

### B.

We will not delay long over the People's claim that the child's use of anatomical dolls and the child's gesturing in describing sexual acts during interviews by the detective and the counselor did not constitute hearsay evidence. Hearsay is defined in CRE 801(c) as "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A "statement" includes not only an oral or written assertion but also "nonverbal conduct of a person, if it is intended by [the person] to be communicative." CRE 801(a).

The prosecuting attorney's offer of proof leaves no doubt that K.B.'s use of anatomical dolls during the interviews by the detective and the counselor, as well as the child's gesturing during these interviews, constituted a form of nonverbal conduct that was intended by the child to be communicative. K.B. first made use of the dolls while she was interviewed by the detective on the evening of April 16, 1985. In response to the detective's question about how the defendant hurt her, K.B. placed the male doll on top of the female doll and placed the penis of the doll on the vaginal area, stating that the defendant "had one too" but that "his was bigger" and that she had been hurt "down there," pointing to her vaginal area. K.B.'s second use of the dolls occurred during several interviews with the family therapist or counselor at the county mental health center. Again, in response to the counselor's request for a description of what happened to her, K.B. put the male and female dolls together and said that the defendant "put his boney right here," pointing again to her vaginal area. The prosecuting attorney's offer of proof clearly demonstrates that K.B.'s use

of the dolls and her gesturing were in response to questions by the police officer and the counselor concerning the alleged sexual assault, and that the child's use of the dolls and gesturing were intended to be no less communicative than the child's verbal responses. The child's use of the dolls and the child's gesturing during the interviews, therefore, clearly satisfied the definition of hearsay.

### C.

We next consider the People's argument that, notwithstanding the hearsay character of the evidence, the child's use of the anatomical dolls and the child's gesturing during the interviews satisfied the corroborative-evidence requirement of subsection 13–25–129(1)(b)(II). We acknowledge, as contended by the People, that the Colorado Rules of Evidence state that a trial court is not bound by the rules of evidence, except with respect to privileges, in determining preliminary questions concerning the admissibility of evidence. *See* CRE 104(a); CRE 1101(d)(1). Where, however, the General Assembly has enacted a statutory scheme that creates a special rule of evidence for a particular category of cases and the evidentiary rule is not otherwise included in the Colorado Rules of Evidence, and where the statutory scheme includes a procedural protocol for determining the admissibility of evidence offered under the statute, the Colorado Rules of Evidence clearly contemplate that questions relating to admissibility of evidence offered under any such statute should be determined in accordance with the statutory scheme. *See* CRE 1101(e) (Rules of Evidence apply in special statutory proceeding only to extent "that matters of evidence are *not* provided for in the statutes which govern procedure therein.") (emphasis added). Section 13–25–129(1) not only states that the hearsay exception therein created applies only when the child's out-of-court statement is "not otherwise admissible by a statute or court rule which provides an exception to the objection of hearsay," but also requires an *in-limine* admissibility hearing and sets forth explicit conditions of admissibility

with respect to any statement offered under the statute. We, therefore, must look to section 13–25–129, rather than the Colorado Rules of Evidence, for the controlling evidentiary standards of admissibility.

Subsection 13–25–129(1)(b)(II) requires that there be "corroborative evidence of the act which is the subject of the [child's] statement." The critical issue in this case centers on the meaning of the term "corroborative evidence" as used in the statute. "It is a cardinal rule of statutory construction that words are to be construed according to their 'common usage' and that a term which has acquired a technical or particular meaning, whether by legislative definition or otherwise, should be construed according to its acquired meaning." *Binkley v. People*, 716 P.2d 1111, 1113 (Colo.1986); *see* section 2–4–101, 1B C.R.S. (1980). Since the General Assembly did not define the term "corroborative evidence" in section 13–25–129, we first look to its commonly accepted meaning and then consider whether it has acquired a technical or particular meaning.

To "corroborate" means "to make strong or strengthen," "to provide evidence of the truth of," or to "make more certain," and the word "corroborative" means "serving or tending to corroborate." Webster's Third International Dictionary 512 (1986). In the context of evidence, corroborative or corroborating evidence means evidence "supplementary to that already given and tending to strengthen or confirm it" or, stated somewhat differently, "[a]dditional evidence of a different character to the same point." Black's Law Dictionary 311 (5th ed. 1979). The term "corroborative evidence," in its commonly accepted meaning, therefore, connotes evidence independent of and supplementary to a fact and tending to strengthen or confirm that fact.

The term "corroborative evidence" has also been used in a technical sense in varied contexts, but the technical sense of the term is not substantially different from the commonly accepted meaning. In *People v. Martinez*, 187 Colo. 413, 416, 531 P.2d 964, 965 (1975), for example, we held that the rule requiring corroboration of an accomplice's testimony may be satisfied by evidence, direct or circumstantial, which establishes the defendant's participation in the commission of the crime and may be "from outside sources, or may be in the form of one accomplice corroborating another." In similar fashion, we held in *Neighbors v. People*, 168 Colo. 319, 322, 451 P.2d 264, 265 (1969), that the rule requiring the corroboration of an accused's confession is satisfied by "other and independent evidence," which "need only be slight" but must be sufficient "to convince the jury that the crime is real and not imaginary."

We must presume that the General Assembly "has knowledge of the legal import of the words it uses" in a statutory enactment. *People v. Guenther*, 740 P.2d 971, 976 (Colo.1987). In the instant case, however, we need not rest our construction of the term "corroborative evidence" solely on this presumption. The committee comments of the legislators directly concerned with the bill that incorporated the "corroborative evidence" requirement into the statutory scheme clearly show that the term was intended to carry the same meaning as the commonly accepted definition of the term and the meaning which this court attributed to the term in our prior decisions. When the bill was before the Senate Judiciary Committee in 1983, one of the committee members voiced a concern that young children can be "very imaginative" and that he did not want "an imagination of a child to be testimony to convict an innocent person." In response to this comment, the bill's sponsor, Senator Soash, referred to the "corroborative evidence" requirement for an unavailable child-witness and stated:

> So by having that requirement . . ., there being some other corroborative evidence that the event took place, that would solve the problem that you are concerned with of someone just making it up and saying it, because that alone won't be enough. They either had to be present or there would have to be some other evidence besides just that [child's] statement.

Tape Recording of Senate Judiciary Committee Hearing on Senate Bill 11, 54th General Assembly, First Session, January 1983. This legislative colloquy clearly indicates that the bill's sponsor was of the view that the term "corroborative evidence" was intended to mean evidence independent of and supplementary to that which is corroborated.

We are not here concerned with the constitutional necessity of the corroborative-evidence requirement. Nor are we concerned with the wisdom of such requirements, although the rationale for such a rule is readily discernible:

> It is a matter of common sense for most people that one of the best ways to determine whether what someone says is trustworthy is to see if it is corroborated by other evidence. In the context of child abuse, for example, if part of the child's hearsay statement is that the assailant tied her wrists or had a scar on his lower abdomen, and there is physical evidence or testimony to corroborate the child's statement, evidence which the child could not have fabricated, we are more likely to believe that what the child says is true. Conversely, one can imagine a situation in which a child makes a statement which is spontaneous or is otherwise made under circumstances indicating that it is reliable, but which also contains undisputed factual inaccuracies so great that the credibility of the child's statements is substantially undermined.

*Idaho v. Wright,* — U.S. —, 110 S.Ct. 3139, 3153–54, 111 L.Ed.2d 638 (1990) (Kennedy, J., dissenting). Our responsibility in this case is to construe and apply the statute in a manner consistent with the statutory text, for in the last analysis it is the statutory text that is most reflective of legislative intent, and it is legislative intent that is the polestar of statutory construction. *E.g., Guenther,* 740 P.2d at 975; *People v. District Court,* 711 P.2d 666, 671

(Colo.1985); *People v. Lee,* 180 Colo. 376, 381, 506 P.2d 136, 139 (1973).

■■■ We are convinced that the term "corroborative evidence" in section 13–25–129(1)(b)(II) was intended to mean what the term clearly denotes—that is, evidence, direct or circumstantial, that is independent of and supplementary to the child's hearsay statement and that tends to confirm that the act described in the child's statement actually occurred. By way of example, and not of limitation, corroborative evidence may include any of the following: testimony from an eyewitness, other than the unavailable child-victim, whose statement is offered into evidence, that the offense occurred; statements of other children who were present when the act was committed against the victim; medical or scientific evidence indicating that the child was sexually assaulted; expert opinion evidence that the child-victim experienced post-traumatic stress consistent with the perpetration of the offense described by the child; evidence of other similar offenses committed by the defendant; the defendant's confession to the crime; or other independent evidence, including competent and relevant expert opinion testimony, tending to establish the commission of the act described in the child's statement.

The consequences of adopting the alternative construction proposed by the People are obvious. Construing subsection 13–25–129(1)(b)(II) so as to permit a child's verbal or nonverbal assertions made during the course of a statement to be used as corroborative evidence of the act described in the statement would render the child's statement self-corroborating and would thereby deprive the term "corroborative evidence" of any meaningful content. In effect, the proponent of the child's statement would be permitted to bootstrap on the assertive content of the statement in order to "corroborate" the act which is the subject of the child's statement.[9] If the Gen-

---

9. The problem of evidentiary bootstrapping arises in a variety of situations. In *Idaho v. Wright,* — U.S. —, 110 S.Ct. 3139, 3150–51, 111 L.Ed.2d 638 (1990), the United States Supreme Court addressed the problem in considering whether corroborating evidence could ap-

propriately be considered in determining whether an unavailable child-victim's hearsay statement satisfied the "particularized guarantees of trustworthiness" for purposes of the Confrontation Clause. In holding that it could not, the Court stated:

eral Assembly had intended such a construction, it would have sanctioned the admissibility of the child's statement solely on the basis of the trial court's determination that the "time, content and circumstances of the statement provide sufficient guarantees of reliability," without regard to the existence of corroborative evidence.

To be sure, one might draw any number of inferences from a child's description of a sexual act. The child's statement, for example, might possibly lead one to infer that the child possesses a degree of sexual knowledge unexpected of a child of that chronological age. The fact remains, however, that the plausibility of such an inference derives directly from the assertive content of the child's description of the sexual act. Such inference drawing, reduced to its basic components, is but another form of bootstrapping on the hearsay statement in an effort to satisfy the corroborative evidence requirement of the statute. In effect, the proponent of the statement relies on the truth of the statement to infer a state of mind on the part of the child and then attempts to utilize the child's state of mind to corroborate the truth of the matter described in the statement. The manifest circularity implicit in that mode of analysis is irreconcilable with the statutory requirement that there be corroborative evidence—that is, evidence independent of the child's statement—of the act described

In short, the use of corroborating evidence to support a hearsay statement's "particularized guarantees of trustworthiness" would permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial, a result we think at odds with the requirement that hearsay evidence admitted under the Confrontation Clause be so trustworthy that cross-examination of the declarant would be of marginal utility. Indeed, although a plurality of the Court in *Dutton v. Evans* [400 U.S. 74 [91 S.Ct. 210, 27 L.Ed.2d 213] (1970) ] looked to corroborating evidence as one of four factors in determining whether a particular hearsay statement possessed sufficient indicia of reliability, see 400 U.S., at 88, 91 S.Ct., at 219, we think the presence of corroborating evidence more appropriately indicates that any error in admitting the statement might be harmless, rather than that any basis exists for presuming the declarant to be trustworthy. *See id.,* at 90, 91 S.Ct., at 220 (Blackmun, J., joined by Burger, C.J., concurring) (finding admission of the statement at issue to be harmless error, if error at all); *see also* 4 D. Louisell & C. Mueller, Federal Evidence § 418, p. 143 (1980) (discussing *Evans* ) (footnote omitted). We, of course, are dealing here with a problem of statutory construction and not constitutional confrontation.

The "bootstrapping" problem has also arisen in the context of the co-conspirator hearsay exception. In 1988, for example, we considered this hearsay exception in *People v. Montoya,* 753 P.2d 729 (Colo.1988). Prior to our decision in *Montoya,* the United States Supreme Court addressed the co-conspirator hearsay exception in *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). The Court in *Bourjaily* construed Federal Rule of Evidence 801(d)(2)(E), which provides that a statement is not hearsay if the statement is offered against the party and is a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy. The Court held that, in determining the preliminary questions of admissibility relating to whether there was a conspiracy involving the defendant and the declarant and whether the declarant made the statement in furtherance of the conspiracy, a trial court may consider the alleged co-conspirator's statement itself. It is important to note that Federal Rule of Evidence 801(d)(2)(E) does not contain any express requirement of "corroborative evidence," as does section 13–25–129(1)(b)(II). Moreover, the Supreme Court in *Bourjaily* expressly left open whether a court could rely *solely* on the co-conspirator's statements to determine the preliminary questions of admissibility. 483 U.S. at 181, 107 S.Ct. at 2781. In *Montoya,* we construed Colorado Rule of Evidence 801(d)(2)(E), which is identical to the Federal Rule, and resolved what *Bourjaily* had not. We concluded that, although a trial court may consider the co-conspirator's statement in determining the preliminary questions of admissibility, "there must also be some evidence, independent of the alleged co-conspirator's statement, establishing that the defendant and the declarant were members of the conspiracy" before the co-conspirator's statement is admissible. 753 P.2d at 736. *Montoya,* therefore, clearly stands for the proposition that before a co-conspirator's statement may be admitted into evidence, there must be some "corroborative evidence," separate and apart from the statement itself, that establishes the evidentiary conditions for admissibility. In contrast to CRE 801(d)(2)(E), which is silent on the requirement of corroborative evidence as a condition precedent to admissibility, the statutory text of section 13–25–129(1)(b)(II) explicitly requires "corroborative evidence of the act which is the subject of the [child's] statement."

in the child's statement.[10]

In light of our determination that the statute does not contemplate the use of the assertive content of the child's statement, whether in the form of a verbal or nonverbal assertion, as corroborative evidence of the act described in the child's statement, we also are convinced that subsection 13–25–129(1)(b)(II) was not intended to sanction the use of one of the child's hearsay statements as corroborative evidence of the act described in another hearsay statement made by the same child. Such reciprocal use of hearsay as corroborative evidence would be but another form of evidentiary bootstrapping.

### D.

The trial court in this case ruled that the child's statements to the police detective and the counselor were admissible because they were corroborated by the child's use of the anatomical dolls and the child's gesturing during the course of the statements. Because the child's use of the dolls and gesturing constituted nonverbal assertions and thus were hearsay, those nonverbal assertions did not qualify as corroborative evidence for purposes of subsection 13–25–129(1)(b)(II). In regard to K.B.'s statements to the babysitter, the babysitter's mother, and the foster home coordinator, the prosecuting attorney made no showing during the offer of proof that there was any corroborative evidence of the act described by the child in each of these statements. Rather, the prosecutor relied on K.B.'s other hearsay statements to the detective and the counselor, along with the child's verbal and nonverbal assertive actions and gestures during those statements, to satisfy the corroborative-evidence requirement of the statute. As previously discussed, the corroborative-evidence requirement cannot be satisfied by using one or several of K.B.'s hearsay statements to corroborate the act described in another hearsay statement of the child. Under this state of the record, the trial court erred in admitting K.B.'s statements into evidence, and the court of appeals properly reversed the judgment of conviction and remanded the case for a new trial.

We accordingly affirm the judgment of the court of appeals.

ROVIRA, C.J., concurs in part and dissents in part.

VOLLACK, J., joins in the concurrence and dissent.

Chief Justice ROVIRA concurring in part and dissenting in part:

Section 13–25–129, 6A C.R.S. (1987), provides in relevant part that the hearsay statement of an unavailable child is admissible in evidence if the court finds in an *in camera* hearing that the "time, content, and circumstances of the statement provide sufficient safeguards of reliability," and that "there is corroborative evidence of the act which is the subject of the statement." The majority holds that the trial court erred in concluding that there was corroborative evidence of the acts that were the subject of K.B.'s statements. In view of our definition of "corroborative evidence" in *Stevens v. People*, 796 P.2d 946 (Colo. 1990), and the legislature's concern over the difficulty of prosecuting sexual-abuse offenses, I do not agree with the majority's unduly narrow definition of "corroborative evidence." Moreover, I do not agree with the majority's holding that Colorado Rules of Evidence 104(a) and 1101(d)(1) are inapplicable. While I join in Parts II, III and IV of the majority opinion, I respectfully dissent to Part V.

---

**10.** Some courts have held that the so-called "precocious sexual knowledge" manifested in a child-victim's hearsay statement is nonassertive in nature and thus admissible to corroborate the child's hearsay statement. *E.g., State v. Swan,* 114 Wash.2d 613, 790 P.2d 610 (1990); *State v. Jones,* 112 Wash.2d 488, 772 P.2d 496 (1989). Although we acknowledge that the sexual terminology exhibited in a child's statement may be a factor to consider in determining whether the child's statement contains "sufficient safeguards of reliability" for purposes of subsection 13–25–129(1)(a), *see* Part IV, for reasons stated in the text of our opinion we reject the notion that the level of sexual knowledge that might possibly be inferred from the child's statement is evidence independent of the statement itself and corroborative of the act described in the statement.

## I

CRE 104(a) provides in relevant part that "[p]reliminary questions concerning ... the admissibility of evidence shall be determined by the court.... In making its determination it is not bound by the rules of evidence except those with respect to privileges." Similarly, CRE 1101(d)(1) provides in relevant part that the rules of evidence do not apply to "[t]he determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under Rule 104." In the context of subsection 13–25–129(1)(b)(II), the determination of what facts constitute "corroborative evidence" unquestionably falls under the scope of CRE 104(a) and CRE 1101(d)(1). Thus, under a plain reading of the rules, a trial judge in a section 13–25–129 proceeding is not bound by the rules of evidence, including the evidentiary rule prohibiting hearsay, in determining whether the corroboration requirement of section 13–25–129 has been satisfied. Accordingly, a trial judge in making preliminary findings of fact "has considerable discretion ... under CRE 104(a) in resolving preliminary questions concerning the admissibility of evidence" and " 'must be permitted to evaluate [hearsay] statements for their evidentiary worth as revealed by the particular circumstances of the case.' " *People v. Montoya*, 753 P.2d 729, 732–33, 735–36 (Colo.1988) (quoting *Bourjaily v. United States*, 483 U.S. 171, 180, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987)).

### A

The majority begins its analysis of section 13–25–129's corroborative-evidence requirement by "acknowledg[ing] ... that the Colorado Rules of Evidence state that a trial court is not bound by the rules of evidence, except with respect to privileges, in determining preliminary questions concerning the admissibility of evidence," maj. op. at 523 (citing CRE 104(a); CRE 1101(d)(1)). In reaching its conclusion that the rules of evidence do not provide the "controlling evidentiary standards of admissibility," the majority adds:

Where, however, the General Assembly has enacted a statutory scheme that creates a special rule of evidence for a particular category of cases and the evidentiary rule is not otherwise included in the Colorado Rules of Evidence, and where the statutory scheme includes a procedural protocol for determining the admissibility of evidence offered under the statute, the Colorado Rules of Evidence clearly contemplate that questions relating to admissibility of evidence offered under any such statute should be determined in accordance with the statutory scheme. *See* CRE 1101(e) (Rules of Evidence apply in special statutory proceeding only to extent "that matters of evidence are *not* provided for in the statutes which govern procedure therein.").

Maj. op. at 523–524 (emphasis added).

I can agree with the majority's analysis to the extent that the majority asserts only that admissibility of evidence which is explicitly governed by a statutory rule of evidence may not be controverted by the Colorado Rules of Evidence and, conversely, that the rules of evidence apply in section 13–25–129 proceedings to the extent they do not conflict with the provisions of section 13–25–129. While section 13–25–129 is not a "special statutory proceeding" as contemplated by CRE 1101(e), the principle of CRE 1101(e) is applicable—that is, the rules of evidence "apply to the extent that matters of evidence are not provided for in the statutes which govern procedure therein," CRE 1101(e). However, that simple proposition does not justify the majority's conclusion that CRE 104(a) and CRE 1101(d)(1) are inapplicable to section 13–25–129 proceedings. Nor does its application meet the People's argument that, under CRE 104(a) and CRE 1101(d)(1), the trial court is not bound by the rules of evidence and thus may consider any evidence, including hearsay evidence, in the determination of *"preliminary* questions concerning ... the admissibility of evidence," CRE 104(a) (emphasis supplied).

The standard for admitting into evidence a child-victim's hearsay statements, as provided in section 13–25–129, comprises two

"evidentiary antecedents," *People v. Montoya*, 753 P.2d 729, 732 (Colo.1988): first, that the proponent of the hearsay statements demonstrate that the statements contain "sufficient safeguards of reliability," § 13–25–129(1)(a); and, second, that if the child-victim is unavailable as a witness, "there is corroborative evidence of the act which is the subject of the statement," § 13–25–129(1)(b)(II). *See* maj. op. at 522; *Stevens v. People*, 796 P.2d 946, 951 (Colo. 1990) (plurality opinion); *People v. Diefenderfer*, 784 P.2d 741, 748–51 (Colo.1989). Each of these evidentiary antecedents to admissibility—the reliability requirement and the corroboration requirement—raises a *"preliminary* question[ ] ... concerning the admissibility of evidence," CRE 104(a) (emphasis supplied).

The majority implicitly acknowledges that the reliability requirement concerns a "preliminary question" of admissibility. *See* maj. op. at 520–522. In reviewing the trial court's findings concerning the reliability of K.B.'s statements, the majority recognizes that a trial court may consider a child-victim's statements, even though they are hearsay, in making the determination of whether the statements are reliable. *See* maj. op. at 520–522.

The corroboration requirement, like the reliability requirement, is an "evidentiary antecedent" to admissibility under section 13–25–129 and raises a "preliminary question" of admissibility, as contemplated by CRE 104(a)—that is, the question of whether "there is corroborative evidence of the act which is the subject of the statement" must be answered before a child-victim's hearsay statements may be admitted into evidence. *People v. Montoya*, 753 P.2d 729 (Colo.1988), is instructive. In *Montoya*, we stated that the "evidentiary antecedents for admitting a co-conspirator's [hearsay] statement ... consist of establishing that there was a conspiracy of which the defendant and the declarant were members and that the declarant made the statement during the course and in furtherance of the conspiracy." *Id.* at 732. We subsequently held that each of these "evidentiary antecedents" were preliminary questions concerning admissibility, as contemplated by

CRE 104(a), and that a trial court in answering these preliminary questions was not bound by the rules of evidence and could consider "any other evidence" in addition to the co-conspirator's hearsay statement. *Id.* at 736.

The majority mistakenly construes the evidentiary antecedent of corroborative evidence in subsection 13–25–129(1)(b)(II) as an ultimate question of the admissibility of a child-victim's hearsay statements. However, by its terms section 13–25–129 provides that the ultimate question of the admissibility of a child-victim's hearsay statements cannot be answered by satisfying the reliability requirement alone or the corroboration requirement alone. Rather, as the majority recognizes, maj. op. at 522, the hearsay statements become admissible only upon satisfaction of both evidentiary antecedents.

Section 13–25–129 does not specify how a trial court should determine preliminary questions concerning the admissibility of hearsay statements of child-victims. Because determining preliminary questions of admissibility is a "matter[ ] of evidence [that is] not provided for in the statute[ ] which govern[s] procedure therein," CRE 1101(e), Colorado Rules of Evidence 104(a) and 1101(d)(1) are applicable in determining preliminary questions of admissibility in section 13–25–129 proceedings. Accordingly, a trial court in making its determination on the preliminary question of whether "there is corroborative evidence" is not bound by the rules of evidence, including the evidentiary rule prohibiting hearsay, *see* CRE 104(a); CRE 1101(d)(1), and it may consider a child-victim's hearsay statements in making its determination of whether the corroboration requirement is satisfied.

While the majority apparently abjures the application of CRE 104 and CRE 1101(d)(1) in section 13–25–129 proceedings and directs trial courts to "look to" section 13–25–129 and not the rules of evidence for the "controlling evidentiary standards of admissibility," section 13–25–129 contains no provision that would serve the same function as CRE 104. Because of the need

for a procedure to guide trial courts in determining preliminary questions of admissibility and because of the absence of such a procedure in section 13–25–129, I would permit the rules of evidence—and in particular CRE 104(a)—to supply the missing evidentiary procedure.

### B

The majority also asserts that CRE 104(a) and CRE 1101(d)(1) are inapplicable because "[s]ection 13–25–129(1) not only states that the hearsay exception therein created applies only when the child's out-of-court statement is 'not otherwise admissible by a statute or court rule which provides an exception to the objection of hearsay,' but also requires an *in-limine* admissibility hearing and sets forth explicit conditions of admissibility with respect to any statement offered under the statute." Maj. op. at 524. The majority reads too much into subsection 13–25–129(1).

The language in subsection 13–25–129(1) upon which the majority relies merely indicates that section 13–25–129 is a hearsay exception of last resort. Only if a proponent of a child's hearsay statement cannot bring the statement into evidence using well-established hearsay exceptions may the proponent then turn to section 13–25–129, which we have called a "residuary rule[ ]." *People v. Diefenderfer,* 784 P.2d 741, 752 (Colo.1989). While the language in subsection 13–25–129(1) certainly excludes the use of the hearsay exceptions contained in the rules of evidence once section 13–25–129 is invoked, the exclusionary language cannot realistically be read to discard CRE 104(a) and CRE 1101(d)(1) in section 13–25–129 proceedings.

I do not find support for the majority's conclusion that subsection 13–25–129(1) requires an *in-limine* admissibility hearing and imposes "explicit conditions of admissibility with respect to any statement offered under the statute," maj. op. at 523. Neither the requirement of an *in-limine* hearing nor the imposition of conditions of admissibility suggests that the legislature intended to exclude the applicability of CRE 104(a) and CRE 1101(d)(1). I find more

indicative of the legislature's intentions that section 13–25–129 does not provide a procedure by which a trial judge is to determine preliminary questions of admissibility. The absence of such a procedure strongly suggests that the trial judge is to apply the rules of evidence, specifically CRE 104(a) and CRE 1101(d)(1), in determining preliminary questions of admissibility in section 13–25–129 proceedings. *See* CRE 1101(e); *Pruett v. Barry,* 696 P.2d 789, 794 (Colo. 1985) ("rules of evidence apply in 'special statutory proceedings[ ]' ... *to the extent that they are not in conflict with statutory requirements for such proceedings* ") (emphasis supplied).

### II

In *Stevens v. People,* 796 P.2d 946 (Colo. 1990), a majority of this court in separate opinions held that " 'corroborative evidence,' as contemplated by section 13–25–129, is any evidence, direct or by proof of surrounding facts and circumstances, that tends to establish the act described by the child in the statement occurred." 796 P.2d at 952; *id.* at 957 (Lohr and Quinn, JJ., concurring). The majority now states that the majority in *Stevens* considered only the "general sense" of the term "corroborative evidence" and "did not attempt to determine the precise scope of the corroborative-evidence requirement, nor did [it] delineate the various forms of corroborative evidence that might satisfy the statutory requirement." Maj. op. at 522–523. As reformulated by the majority, "corroborative evidence" comprises "evidence, direct or circumstantial, that is independent of and supplementary to the child's hearsay statement and that tends to confirm that the act described in the child's statement actually occurred." Maj. op. at 525. I do not agree that the legislature intended such an unduly constrained definition of "corroborative evidence" in the context of section 13–25–129.

### A

Section 13–25–129 does not define "corroborative evidence," nor does the Washington child hearsay statute, Wash.Rev.Code

§ 9A.44.120 (1989), upon which Colorado's statute was based. *Stevens,* 796 P.2d at 951 (plurality opinion); *see* Comment, *Confrontation of Child Victim–Witnesses: Trauma, Unavailability, and Colorado's Hearsay Exceptions for Statements Describing Sexual Abuse,* 60 U. of Colo.L. Rev. 659, 667 (1989). As the majority notes, this court and other authorities have stated that "corroborative evidence" "connotes evidence independent of and supplementary to a fact and tending to strengthen or confirm that fact," maj. op. at 524 (citing, *inter alia, People v. Martinez,* 187 Colo. 413, 416, 531 P.2d 964, 965 (1975), *Black's Law Dictionary* 311 (5th ed. 1979)); *but see Davis v. People,* 176 Colo. 378, 382, 490 P.2d 948, 950 (1971). However, in view of the well-recognized difficulty in prosecuting child-abuse offenses, and especially sexual-abuse crimes, I do not believe that the legislature intended to follow the narrow definition of "corroborative evidence" found in the cases cited by the majority.[1] I believe that section 13–25–129 would be rendered lifeless under the majority's unduly narrow definition of corroborative evidence.

In enacting the child hearsay statute, the legislature was aware that sexual-abuse crimes are difficult to prosecute in large part because of the lack of evidence corroborative of sexual abuse. As we have noted, "[s]eldom can acts of sexual abuse be physically corroborated, and usually the only evidence directly implicating the attacker is the child's hearsay statements." *Stevens,* 796 P.2d at 952 (plurality opinion) (citing *People v. District Court of El Paso County,* 776 P.2d 1083, 1085 n. 1 (Colo. 1989)). This view is widely shared among courts and commentators. *See, e.g., Miller v. State,* 517 N.E.2d 64, 69 (Ind.1987); *State v. Swan,* 114 Wash.2d 613, 623, 790 P.2d 610, 615 (1990); Myers, Bays, Becker, Berliner, Corwin & Saywitz, *Expert Testimony in Child Sexual Abuse Litigation* [hereinafter "*Child Sexual Abuse Litigation*]," 68 Neb.L.Rev. 1, 37 (1989)[2]; R. Eatman & J. Bulkley, *Protecting Child Victim/Witnesses: Sample Laws and Materials,* at 9, Nat'l Legal Resource Center for Child Advocacy and Protection (1986); Berliner, *The Child Witness: The Progress and Emerging Limitations,* in *Papers from a National Policy Conference on Legal Reforms in Child Sexual Abuse Cases,* at 99 (1985); Comment, *A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases,* 83 Colum.L. Rev. 1745, 1749–50 (1983); Oates, Gyler & Adler, *The Hospital Child Abuse Team,* in

---

**1.** The majority's reliance on a hearing held by the Senate Judiciary Committee, which was considering the bill proposing section 13–25–129, is misplaced. The hearing is at best ambiguous concerning how "corroborative evidence" should be defined. The same senator on whose statements the majority relies for the proposition that "corroborative evidence" includes only evidence independent of a child-victim's hearsay statements stated that:

> [I]n these cases generally [the child-victims'] life experiences have not [inaudible] that they can fabricate these types of experiences. And if you look at the testimony they give and the terms they use to describe these kinds of actions—and you don't get this kind of stuff on TV—you can make up an entire murder scene at a pretty early age from what you've seen on TV. This kind of a sexual crime, unless you're watching the TV other than most children do, would be very difficult for you to describe and particularly given the terms that they use....

*Hearings on S.B. 11 Before the Senate Comm. on the Judiciary* [hereinafter *"Hearings on S.B. 11"*], 54th Gen. Assembly, 1st Sess., Audio Tape No. 83–3, at hr. 14 (Jan. 19, 1983) (statement of Sen. Soash). These statements suggest that corroborative evidence may be derived from a child-victim's hearsay statements. Moreover, one of the Judiciary Committee members stated, "I was just wondering ... how this really works in practicality, you know, just hearing the words but I don't know how it works." *Id.*

**2.** In *Child Sexual Abuse Litigation,* the authors stated:

> There is often no physical evidence of child sexual abuse. There are several reasons for lack of physical findings in sexually abused children. Many abusive acts, such as fondling, kissing, fellatio, cunnilingus, or the use of the child in pornography leave no marks. Even full penile penetration may not damage the hymen. Some sexual offenders suffer from erectile and/or ejaculatory dysfunction. Severe injuries to the genitalia of sexually abused children are rare. Healing of injuries in the genital area may be complete and rapid, so that no physical evidence remains when the child comes to the medical examination.

68 Neb.L.Rev. at 37 (footnotes omitted).

*Child Abuse: A Community Concern,* at 27 (K. Oates 1982).

## B

I agree with the majority's assertion that a proponent of a child-victim's hearsay statements cannot satisfy section 13–25–129's corroboration requirement merely by offering a child-victim's hearsay statements for the truth of the matters asserted. As the majority notes, this would render meaningless section 13–25–129's corroboration requirement.[3] *See* maj. op. at 525.

However, the recognition that a child-victim's hearsay statements may not be admitted solely on the basis of the truth of the matters asserted does not warrant the imposition of a prophylactic rule that a child-victim's hearsay statements may never be considered at the corroboration phase of section 13–25–129. Indeed, given the legislature's knowledge of the difficulty of prosecuting sexual-abuse cases because of the lack of corroborative evidence, I find it highly implausible that the legislature would have enacted a statute designed to make prosecution of child-abuse cases easier while imposing an admittedly impossible standard for the prosecutor to reach in the overwhelming majority of sexual-abuse cases. In particular, I do not believe that the legislature would impose a requirement that corroborative evidence cannot under any circumstances include a child-victim's statements—or any inferences that might validly be obtained from the statements—especially in view of the statement of a

Senate sponsor of section 13–25–129 that it "would be very difficult" for a child-victim to describe certain sexual acts "particularly given the terms that they use." *Hearings on S.B. 11,* at hr. 14. Moreover, the legislature's decision to omit any procedure to guide a trial judge in determining preliminary questions of admissibility strongly suggests that it intended that the trial judge, pursuant to CRE 104(a), would consider a child-victim's hearsay statements " 'for their evidentiary worth as revealed by the particular circumstances of the case,' " *People v. Montoya,* 753 P.2d 729, 735–36 (Colo.1988) (quoting *Bourjaily v. United States,* 483 U.S. 171, 180, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987)). *See* Part I, *supra,* at 514–516.

As a plurality of the court stated in *Stevens,* a " ' "stubborn insistence on corroboration that is impossible to obtain" ' should not defeat the essential purposes of the child hearsay statute." 796 P.2d at 952 (quoting *Swan,* 114 Wash.2d at 641, 790 P.2d at 624 (quoting *State v. Jones,* 112 Wash.2d 488, 496, 772 P.2d 496, 500 (1989))). We must liberally construe "corroborative evidence," as used in section 13–25–129, "in order that the true intent and meaning of the general assembly may be fully carried out." § 2–4–212, 1B C.R.S. (1980). In construing an almost identical child hearsay statute on which section 13–25–129 was based, the Supreme Court of Washington held that "to give any real effect to the child victim hearsay statute, the corroboration requirement must reasonably be held to include indirect evidence of abuse. Such evidence ... include[s] a

**3.** The majority's concern regarding the effect to be given the statute is more persuasive than its assertion that to permit in any way a child-victim's hearsay statements to be "corroborative evidence" violates the "bootstrapping" rule.

It is highly questionable whether the "bootstrapping" prohibition is applicable in the context of section 13–25–129. The "bootstrapping" prohibition was adopted to prevent the proponent of a presumptively unreliable hearsay statement of a co-conspirator from satisfying the requirements of the co-conspirator hearsay exception, *see, e.g.,* CRE 801(d)(2)(E), on the basis of the hearsay statement itself. *See, e.g., Glasser v. United States,* 315 U.S. 60, 74–75, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942); *People v. Montoya,* 753 P.2d 729, 734–35 (Colo.1988). At

the corroboration phase of section 13–25–129 proceedings, the child-victim's hearsay statements have already been found to contain "sufficient safeguards of reliability." Consequently, the statements do not "lift [themselves by their] own bootstraps to the level of competent evidence," *Glasser,* 315 U.S. at 75, 62 S.Ct. at 467—rather, they have satisfied any "competence" objection because they have been found to be constitutionally reliable.

Moreover, the efficacy of the "bootstrapping" rule was significantly diminished by the holding in *Bourjaily v. United States,* 483 U.S. 171, 181, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987), that Fed.R.Evid. 104(a) "superseded" *Glasser's* "bootstrapping" rule.

child victim's precocious knowledge of sexual activity...." *Swan*, 114 Wash.2d at 623, 790 P.2d at 615 (footnote deleted); *accord Jones*, 112 Wash.2d at 495–97, 772 P.2d at 500. I am of the opinion that the *Swan* court's holding correctly reflects our legislature's intent in requiring "corroborative evidence" under subsection 13–25–129(1)(b)(II).

A child-victim's statement, when used to demonstrate the child's precocious knowledge of sexual anatomy and sexual acts, is not hearsay. *E.g., In re Jean Marie W.*, 559 A.2d 625, 629 (R.I.1989); *see, e.g., McCormick on Evidence* § 250, at 741–42 (Cleary 3d ed. 1984); *see also* CRE 801(c) (hearsay is statement "other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"); *Prudential Ins. Co. of Am. v. Sommers*, 148 Colo. 212, 221, 365 P.2d 544, 549 (1961) (out-of-court statement offered for some purpose other than proving the truth of the matter asserted is not hearsay).

Psychologists and social workers specializing in child psychology have agreed that a child's precocious knowledge of sexual acts and sexual anatomy, even more so than posttraumatic stress symptoms, strongly suggests that the child has been sexually abused.

> While some of the behaviors observed in sexually abused children are consistent with a number of problems, others are more strongly associated with personal or vicarious sexual experience. *Examples of behaviors that have greater specificity of sexual abuse include age-inappropriate knowledge of sexual acts or anatomy*, sexualization of play and behavior in young children, the appearance of genitalia in young children's drawings, and sexually explicit play with anatomically detailed dolls.
>
> The presence in a young child of behaviors commonly observed in sexually abused children can be probative of abuse. *Evidence of the behaviors is relevant because it has a tendency to prove that abuse occurred. Children with behaviors associated with sexual abuse—particularly sexual reactions—are more likely to have been abused than children without such behaviors.* This conclusion does not ignore the fact that approximately twenty percent of sexually abused children demonstrate no observable behavioral reactions. Absence of behaviors does not disprove abuse, but presence of behaviors increases the likelihood of abuse. Evidence of behaviors is seldom dispositive, but evidence need not be dispositive to be logically relevant and admissible.
>
> ....
>
> Probative value declines as sexual behaviors and medical evidence decrease in proportion to nonsexual behaviors. When the only evidence consists of a number of ambiguous, nonsexual behaviors, the evidence may lack any probative value, or probative worth may be outweighed by the potential for unfair prejudice or jury confusion.
>
> When a child demonstrates no sexual behaviors, but does evidence signs of serious anxiety or posttraumatic stress disorder, expert testimony may still be relevant. In this scenario, however, testimony serves only to establish that the child may have experienced some type of traumatic event. Such testimony is not specific to sexual abuse.

*Child Sexual Abuse Litigation* at 62–64 (emphasis supplied; footnotes omitted). Dr. Jon Conte, an associate professor at the School of Social Service Administration at the University of Chicago, has stated:

> Behaviors sometimes exhibited by sexually abused children are rarely caused by any event other than sexual abuse. Sexual behavior with peers, toys, or animals; sexual language or knowledge that is new or atypical for a given child; or physical trauma to the genitals are all most likely to be caused by sexual abuse. Only in rare cases of severely disturbed children would it be likely to find such behaviors in the absence of actual sexual contact between the child and someone else.

*A Look at Child Sexual Abuse* 25–26 (1986); *accord* Benedek & Schetky, *Prob-*

*lems in Validating Allegations of Sexual Abuse. Part 1: Factors Affecting Perception and Recall of Events*, 26 J. of the Am.Acad. of Child and Adolescent Psychiatry, at 912–15 (1987), *reprinted in Annual Progress in Child Psychiatry and Development* [hereinafter *"Child Psychiatry"*], at 629 (S. Chess, A. Thomas & M. Hertzig 1988) ("Although adolescents are presumed to be knowledgeable about erections and ejaculations and may use those words, such descriptions coming from a 3–year–old should wave a red flag."); C. Walker, B. Bonner, & K. Kaufman, *The Physically and Sexually Abused Child: Evaluation and Treatment* 115, 142 (1988); S. Sgroi, *Handbook of Clinical Intervention in Child Sexual Abuse* 39–79 (1982); *see also In re Nicole V.*, 71 N.Y.2d 112, 122, 524 N.Y.S.2d 19, 23, 518 N.E.2d 914, 918 (1987) (citing testimony of therapist as corroborative evidence: "She found it significant that Nicole repeated her claims to various people over a period of time in a consistent manner because ... children 'do not have the skill at lying that adults do' and thus 'cannot be consistent [about lying] for a period of several months to several different people.' ") (brackets in original).

As the majority states, one of the concerns raised in the Senate Judiciary Committee's discussion of the bill creating section 13–25–129 was that a " 'very imaginative' " child should not be permitted to convict an innocent person. Maj. op. at 524 (quoting *Hearings on S.B. 11, supra* note 1; *see State v. Hunt*, 48 Wash.App. 840, 847–48, 741 P.2d 566, 571 (1987) (corroboration requirement protects against fabricated or imagined allegations when defendant is unable to cross-examine child-victim). However, the Senate Judiciary Committee was also made aware, *see Hearings on S.B. 11*, at hr. 14, that the available information regarding children is that most young children, especially children as young as K.B., the victim in this case, are unable to "imagine" or fabricate stories of explicit sexual activities without having been exposed to such activities, *see, e.g., In the Interest of O.E.P.*, 654 P.2d 312, 318 (Colo.1982) ("A child of three years is hardly adept at the type of reasoned reflection necessary to concoct a false story relating to a bizarre sexual experience implicating the child's mother."); *Bodine v. State*, 737 P.2d 1072, 1075 (Alaska App.1987) (court concluded that, given child's age of five years old at the time of the sexual assault, "the maturity and accuracy of the detail in her description of the offense provided intrinsic assurance of the reliability of her statement"), *cited in Murray v. State*, 770 P.2d 1131, 1138 (Alaska Ct.App.1989); *State v. Robinson*, 153 Ariz. 191, 202, 735 P.2d 801, 812 (1987) ("Without parental manipulation or exposure to adult sexual acts, neither of which even was alleged in this case, five-year-old girls lack the knowledge and experience necessary to fabricate and graphically describe the types of sexual abuse alleged here."); *Jones*, 112 Wash.2d at 497, 772 P.2d at 500–01 ("[Child-victim] has described and demonstrated with particularity acts of sexual gratification that even the most imaginative adult might not conceive in a vacuum of personal experience.").

In this case, K.B.'s statements indicate that K.B. possessed knowledge of sexual acts and sexual anatomy that three-and-a-half-year-old children could not have obtained " 'in a vacuum of personal experience,' " *Swan*, 114 Wash.2d at 631–32, 790 P.2d at 620 (quoting *Jones*, 112 Wash.2d at 497, 772 P.2d at 500). While watching her brother's diaper being changed, K.B. stated that the defendant had a penis like her brother's, "but it's bigger and he hurts me with it." K.B. repeated this statement to Officer Schroer. When her babysitter's mother asked her where her father hurt her, K.B. pointed to her vaginal area. In Schroer's presence, K.B. undressed two anatomically correct dolls, and placed the man doll on top of the girl doll with the man doll's penis on the girl doll's vagina. More than a month later in therapist Freeman's presence, K.B. demonstrated the identical sexual act with a different set of anatomically correct dolls. K.B. indicated to Schroer that the defendant placed his "boney" in her mouth, and "peed" in her mouth.

All of these statements may be used, independent of the truth of the matters they assert, to show K.B.'s precocious sexual knowledge. This knowledge, which is a "classic symptom of child abuse," *Swan*, 114 Wash.2d at 633, 790 P.2d at 620, *accord Nicole V.*, 71 N.Y.2d at 121, 524 N.Y. S.2d at 23, 518 N.E.2d at 918, strongly suggests that K.B. was sexually abused. K.B.'s precocious sexual knowledge, combined with the corroborative evidence that the defendant had numerous opportunities to commit the sexual abuse against K.B. in the absence of eyewitnesses, *see, e.g., Idaho v. Wright*, —— U.S. ——, 110 S.Ct. 3139, 3152, 111 L.Ed.2d 638 (1990), is sufficient "to induce a person of ordinary prudence and caution conscientiously to entertain a reasonable belief" that the sexual abuse that was the subject of K.B.'s hearsay statements occurred. *See Stevens*, 796 P.2d at 953 (plurality opinion); *id.* at 957 (Lohr and Quinn, JJ., concurring). The Supreme Court of Washington and other courts that have considered this issue have held that precocious sexual knowledge—obtained from a child's hearsay statements—constitutes corroborative evidence. *See, e.g., Swan*, 114 Wash.2d at 631–33, 790 P.2d at 620; *Jones*, 112 Wash.2d at 497, 772 P.2d at 500; *Murray*, 770 P.2d at 1138; *Nicole V.*, 71 N.Y.2d at 121–22, 524 N.Y. S.2d at 23–24, 518 N.E.2d at 918–19.

I would permit trial courts to consider a child-victim's hearsay statements " 'for their evidentiary worth as revealed by the particular circumstances of the case,' " *Montoya*, 753 P.2d at 735–36 (quoting *Bourjaily*, 483 U.S. at 180, 107 S.Ct. at 2781). In this case, the trial judge could reasonably find that K.B.'s precocious sexual knowledge, combined with the corroborative evidence that the defendant had the opportunity to commit the sexual abuse

against K.B., satisfied section 13–25–129's corroboration requirement.

### III

The majority's approach to construing section 13–25–129's corroboration requirement fails to recognize probative evidence of sexual abuse that is not hearsay. In so doing, the majority creates unnecessary limitations in sexual-abuse prosecutions.

First, although the majority is unwilling to accept as corroborative evidence a child's precocious sexual knowledge, it is willing to accept corroborative evidence—posttraumatic-stress evidence—that is less probative[4] of sexual abuse. *See* maj. op. at 525.

Second, the majority states that an example of corroborative evidence is "medical or scientific evidence." *See* maj. op. at 525. However, the majority is unwilling to accept well-known medical and/or scientific evidence that children are unable to fabricate details of sexual acts or sexual anatomy. Nor does the majority explain how K.B., a three-and-a-half-year-old child, could consistently sustain, over a period of six months, allegations against her father that detailed sexual acts and sexual anatomy.

Additionally, while the majority states that "competent and relevant expert opinion[ ] tending to establish the commission of the [abusive] act described in the child's statement" is another example of corroborative evidence, maj. op. at 525, the majority's holding would prevent a child-psychology expert from testifying, on the basis of a child-victim's statements, that the child may have been sexually abused based on the child's precocious knowledge of sexual acts and sexual anatomy.

In short, with its unduly narrow approach to construing section 13–25–129, the

---

4. *Child Sexual Abuse Litigation* at 62–64. One social scientist has stated:

> One of the difficulties in conducting research on the effects of trauma is that the traumatic event may be embedded in a long series of stressors. Physical and sexual abuse of children, for example, are often associated with parental separations, financial hardship, parental substance abuse, and foster placement. Similarly, after the death of a family member, families often break up, change associates, or relocate. It may be difficult to discriminate the effect of the traumatic event itself from the effects of preexisting or ensuing stressors.

Lyons, *Posttraumatic Stress Disorder in Children and Adolescents: A Review of the Literature*, in *Child Psychiatry*, at 462 (1988).

majority has failed to effectuate the legislature's intentions in enacting section 13–25–129, and has misconstrued what evidence may constitute corroborative evidence. Contrary to the majority's view, permitting a trial judge to consider K.B.'s hearsay statements and permitting the use of K.B.'s precocious knowledge of sexual acts and sexual anatomy as corroborative evidence promote, rather than diminish, the legislature's intention to ensure that a child-victim's allegations are the product of her experiences and not her imagination.

Accordingly, I respectfully concur in part and dissent in part.

I am authorized to state that Justice VOLLACK joins in this concurrence and dissent.

